**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **SHERI MERTZLUFFT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 4:25-CV-1700 RHH** |
| | ) | |
| **FRANK BISIGNANO,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM AND ORDER**

Plaintiff Sheri Mertzlufft seeks review of the decision of Defendant Social Security Commissioner Frank Bisignano, denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. For the reasons set forth below, the Court reverses and remands the Commissioner's decision.

## I. Background and Procedural History

Plaintiff filed an application for DIB on February 17, 2023, alleging she was disabled as of September 14, 2022. (Tr. 62, 174-175) The Social Security Administration ("SSA") denied Plaintiff's claim initially and on reconsideration on August 30, 2023, and February 22, 2024, respectively. (Tr. 62-87) Plaintiff filed a timely request for a hearing before an administrative law judge ("ALJ"). (Tr. 103-104) The SSA granted Plaintiff's request for review and conducted a hearing in September, 2024. (Tr. 32-61)

In a decision dated October 23, 2024, the ALJ determined that Plaintiff "has not been under a disability within the meaning of the Social Security Act from September 14, 2022, through the date of this decision." (Tr. 14) Plaintiff subsequently filed a request for review of the ALJ's decision with the SSA Appeals Council, which denied review. (Tr. 1-5) Plaintiff has exhausted

all administrative remedies, and the ALJ's decision stands as the Commissioner's final decision. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

## II. Evidence Before the ALJ

Plaintiff, born January 29, 1973, testified that she lived in a home with her 23-year old son and her boyfriend. (Tr. 34, 40) Plaintiff testified she had a driver's license and drove short distances at times. (Tr. 40-41) When asked why her driving was limited, Plaintiff responded as follows:

> I still have unpredictability as far as the [irritable bowel syndrome] and the gastrointestinal issues go. Sometimes I'll be okay and all of a sudden I have stomach cramps so bad I can't stand up or I have to use the bathroom urgently and I either have to come home or make sure that wherever I'm going has a bathroom that's available for me to use.

(Tr. 41)

When the ALJ asked how Plaintiff's impairments affected her ability to work, as relevant here Plaintiff responded as follows:

> I have been diagnosed with IBS-D. Most of the problem with that and the reason why I left [my former job] is because I could be fine and sometimes I would eat a meal, and I'll just be uncomfortable. But more what started happening was that anytime I would eat any sort of food, I would have uncontrollable cramping to the point where I couldn't stand up. My stomach was bloating to the point where I couldn't wear pants with a regular waistband. I wasn't sleeping. And it started happening to the point where I was calling into work two or three times a week. Shortly before I left, it was just—I was in pain constantly. I would wake up and either try to leave early or come in late so that I didn't have to sit in the rush hour traffic because I was terrified that I was going to have diarrhea so bad, I wouldn't be able to make it to work or make it home or make it anywhere I could go. The cramping was so bad that I stopped driving further than you know a few minutes away from my house and I've had anxiety but that made the anxiety all that much worse. It's hard to sleep. It's hard to eat….I get stressed out and my stomach gets upset and then if I try to eat, I'm sick from eating. And then the anxiety gets worse and there are still days when I can't keep any food in my system. There are still days—I mean even a couple of days ago I had lunch and I thought I was fine and I woke up in the middle of the night with diarrhea so bad that I didn't sleep the rest of the night and I just had to go to the bathroom constantly.

(Tr. 45-46) Plaintiff further testified that there were on average at least two complete days during the week when she was completely incapacitated. (Tr. 47)

With respect to her abilities and activities, Plaintiff said that it takes her awhile to get herself dressed and prepare her food. (Tr. 49) She stated that at times it takes her the entire day to do the dishes, and she periodically can't walk down the stairs or manage her dogs by herself. (Tr. 49-50)

A vocational expert testified at the hearing. (Tr. 54-60) The ALJ asked the vocational expert to consider a hypothetical individual similar in age and education to Plaintiff, with no past relevant work and the following limitations:

> Now imagine that individual can perform work at the light exertional level. They can stand or walk for six hours in an eight-hour day and they can sit for six hours in an eight-hour day. They can frequently climb ramps and stairs and occasionally climb ladders, ropes, and scaffolds. They can frequently balance, stoop, kneel, crouch, and crawl. And they must avoid even moderate exposure to fumes, odors, dust, gases, and poor ventilation. They must avoid concentrated exposure to hazards and can understand, remember, and carry out simple instructions and can tolerate occasional contact with the general public.

(Tr. 57) The vocational expert stated that such an individual would not be able to perform any of Plaintiff's past work, assuming she were limited to understanding, remembering, and carrying out only simple instructions. (Tr. 57-58) The vocational expert opined the individual would be able to perform other jobs in the national economy, however, such as a cleaner (housekeeping), marker, or routing clerk.[1] (Tr. 58) When the ALJ modified the hypothetical to state the individual would require bathroom access nearby, with the freedom to take up to four additional breaks lasting up to 20 minutes throughout the day at her discretion, the vocational expert opined there would be no competitive employment available in the national economy. (Tr. 59) With respect to absenteeism,

---

[1] The vocational expert noted that all three positions involved light exertional level, unskilled work. (Tr. 58)

the vocational expert testified that a person who was absent one or more days of work per month at unscheduled times, or who arrived left or left early unpredictably at least 3-5 times per month, would not be able to sustain competitive employment. (Tr. 60)

With regard to Plaintiff's medical records, the Court adopts the facts that Plaintiff set forth in her Statement of Uncontroverted Material Facts, which the Commissioner admitted with certain additions and clarifications. (ECF Nos. 13-1, 20-1) The Court will cite to specific portions of the transcript as needed to address the parties' arguments.

## III. Standards For Determining Disability Under The Social Security Act

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). Under the Social Security Act, a person is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). *Accord Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. § 404.1520(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th

Cir. 2011) (discussing the five-step process). At step one, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i); *McCoy*, 648 F.3d at 611. At step two, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the [twelve-month] duration requirement in [§ 404.1509], or a combination of impairments that is severe and meets the duration requirement"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii); *McCoy*, 648 F.3d at 611. To be severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At step three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. § 404.1520(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. § 404.1520(d); *McCoy*, 648 F.3d at 611.

Prior to step four, the Commissioner assesses the claimant's residual functional capacity ("RFC"), 20 C.F.R. § 404.1520(a)(4), which is "the most [a claimant] can still do despite [his or her] limitations," 20 C.F.R. § 404.1545(a)(1). *See also Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). At step four, the Commissioner determines whether the claimant can return to his or her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. At step five, the Commissioner considers the claimant's

RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g); *McCoy*, 648 F.3d at 611.

Through step four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At step five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 404.1560(c)(2).

## IV. The ALJ's Decision

The ALJ applied the five-step evaluation set forth in 20 C.F.R. § 404.1520(a), and found that Plaintiff: (1) had not engaged in substantial gainful activity since September 14, 2022, the alleged onset date; and (2) had the following severe impairments: irritable bowel syndrome, depression, migraine headaches, asthma, anxiety, and Ehlers Danlos syndrome, that significantly limited her ability to perform basic work activities as required by SSR 85-28. (Tr. 15) At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 16-18)

The ALJ found that, "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (Tr. 19) As support for this determination, the ALJ first recounted Plaintiff's hearing testimony as follows:

> [T]he claimant has reported disability due to irritable bowel syndrome, joint pain, and severe gastrointestinal issues. The claimant testified that she started having gastrointestinal issues in 2022. She said when she eats a meal it is very uncomfortable, she has uncontrollable cramping and bloating, and cannot sleep. She said she had to call into work 2 to 3 times a week because she was in constant pain. She said she would try to leave early or come to work late because she did not want to be [caught in] rush-hour traffic with diarrhea. She said there are days when food will not stay in her system and she has to go to the bathroom constantly. She said 3 days a week are very bad and in the month of August she was completely incapacitated for 11 days. She said she eats mostly fruits and vegetables and has to make everything into [a] smoothie because it is easier on her digestive system. She said she cannot even [frequent] public restaurants because all of her food has to be made from scratch. She also said she has had anxiety and depression. She said it takes a while to get up in the morning and she has a lot of brain fog. She said she feels sick and has anxiety and has difficulty doing chores such as dishes. She said the washer and dryer [are] in the basement, she has cramps and cannot walk down the steps by herself. She said she does not sleep well sometimes[.]

(Tr. 18-19)

After recounting the medical evidence, the ALJ turned to the medical opinions in the record. As relevant here, the ALJ stated as follows:

> The prior administrative medical findings at the time of the initial and reconsideration determinations finding the claimant was capable of light work with the ability to sit/stand/walk 6 hours in an 8-hour day; frequently climb ramps/stairs, occasionally climb ladders, ropes and scaffolds, frequently balance, stoop, kneel, crouch and crawl, must avoid even moderate exposure to fumes, odors, dusts, gases and poor ventilation, must avoid concentrated exposure to hazards; can understand[,] remember and carry out simple instructions and tolerate occasional contact with the general public are persuasive (Exhibits 1A, 4A). The determinations contain numerous citations to the record supporting the RFC, they are fully internally consistent and remain generally consistent with even the fully developed record. The opinions are supported by the longitudinal treatment record, including direct examining observations, objective findings, treatment notes, and diagnoses. Furthermore, their opinions are consistent with other opinions of record. That being said, viewing the evidence in the light most favorable to the claimant, the undersigned has included greater limitations to better account for the claimant's impairments.

(Tr. 23)

After "careful consideration of the entire record," the ALJ determined that Plaintiff maintained the RFC to perform light work, with the following additional limitations:

> [Plaintiff] can stand or walk for 6 hours in an 8-hour day. She can sit for 6 hours in an 8-hour day. She can frequently climb ramps and stairs. She can occasionally climb ladders, ropes, and scaffolds. She can frequently balance, stoop, kneel, crouch and crawl. She must avoid even moderate exposure to fumes, odors, dusts, gases and poor ventilation. She must avoid concentrated exposure to hazards. She can understand[,] remember and carry out simple instructions. She can tolerate occasional contact with the general public.

(Tr. 18) Based on the vocational expert's testimony, the ALJ found that Plaintiff could not perform any past relevant work, but had the RFC to perform jobs that existed in significant numbers in the national economy, such as cleaner (housekeeping), marker and routing clerk. (Tr. 24-25) The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from September 14, 2022 through the date of the decision. (Tr. 25)

**V. Discussion**

Plaintiff claims the ALJ failed to properly evaluate the medical opinion evidence in the record. (ECF No. 13, PP. 3-7). She further claims the ALJ erred in determining her RFC, because substantial evidence did not exist in the record to support the RFC determination. (*Id.*, PP. 7-9) Finally, Plaintiff asserts the ALJ failed to properly evaluate Plaintiff's subjective reports of symptoms and pain. (*Id.*, PP. 9-10) The Commissioner counters that substantial evidence in the record as a whole supports the ALJ's decision that Plaintiff is not disabled. (ECF No. 20)

Because it is dispositive, the Court addresses only Plaintiff's claim regarding her subjective reports of symptoms and pain.

A. Standard of Judicial Review

A court must affirm an ALJ's decision if it is supported by substantial evidence. 42 U.S.C. § 405(g). "'Substantial evidence is less than a preponderance, but is enough that a reasonable

mind would find it adequate to support the Commissioner's conclusion.'" *Chesser v. Berryhill*, 858 F.3d 1161, 1164 (8th Cir. 2017) (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). A court must consider "both evidence that supports and evidence that detracts from the ALJ's determination, [but it] 'may not reverse the Commissioner's decision merely because substantial evidence supports a contrary outcome.'" *Id*. (internal quotation marks and citations omitted).

A court does not "'reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). Therefore, the Court must affirm the ALJ's decision if "'it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings[.]'" *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (quoting *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011)).

B. Subjective Reports of Symptoms and Pain

"For purposes of social security analysis, a 'symptom' is an individual's own description or statement of her physical or mental impairment(s)." *Fendler v. Saul*, No. 4:19CV2431 CDP, 2020 WL 3101043, at *7 (E.D. Mo. Jun. 11, 2020) (citing SSR 16-3p, 2017 WL 5180304, at *2 (Soc. Sec. Admin. Oct. 25, 2017) (republished)). If the claimant makes statements about the intensity, persistence, and limiting effects of her symptoms, "the ALJ must determine whether the statements are consistent with the medical and other evidence of record." *Id.*[2]

---

[2] This inquiry previously was described as an analysis of the "credibility" of a claimant's subjective complaints. *Castillo v. Saul*, No. 4:19CV3309 SRW, 2020 WL 7493174, at *8 n. 2 (E.D. Mo. Dec. 21, 2020). The SSA has issued a new ruling, however, applicable to decisions made on or after March 28, 2016, "that eliminates the use of the term credibility when evaluating a claimant's subjective statements of symptoms, clarifying that 'subjective symptom evaluation is not an examination of an individual's character.'" *Fendler*, 2020 WL 3101043, at *9 n. 4 (quoting SSR

In considering subjective complaints, the ALJ must consider the factors set forth in *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984), which include the claimant's prior work record, and

> observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; (5) functional restrictions.

*Polaski*, 739 F.2d at 1322. "The ALJ need not explicitly discuss each *Polaski* factor." *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004) (citation omitted). If the ALJ finds the claimant's statements inconsistent with the evidence of record, however, "she must make an express determination and detail specific reasons for the weight given the claimant's testimony." *Fendler*, 2020 WL 3101043, at *7 (citing SSR 16-3p, 2017 WL 5180304, at *10; *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012); *Cline v. Sullivan*, 939 F.2d 560, 565 (8th Cir. 1991)).

> An ALJ must do more than merely invoke *Polaski* to insure safe passage for his or her decision through the course of appellate review. Instead, she must set forth the inconsistencies in the evidence presented and discuss the factors set forth in *Polaski*.

*Id.* (internal quotation marks and citations omitted). "While an ALJ need not explicitly discuss each factor in the decision, he or she must nevertheless acknowledge and consider the *Polaski* factors before discounting a Plaintiff's subjective complaints." *Castillo*, 2020 WL 7493174, at *4 (citations omitted).

In this case, the ALJ found that Plaintiff's irritable bowel syndrome constituted a severe impairment. (Tr. 15) She recounted Plaintiff's encounters with various providers (Tr. 20-21), and as noted above, devoted a great deal of discussion to Plaintiff's subjective recitation of symptoms. (Tr. 18-19)

---

16-3p, 2017 WL 5180304, at *2). The factors to be considered remain the same under the new ruling, however. *Id.*

This evidence, as recounted by the ALJ, is largely consistent with Plaintiff's visits with her providers. For example, on September 14, 2022, Plaintiff's alleged onset date, she reported to the emergency room complaining of multiple episodes of loose or watery diarrhea per day, with abdominal pain associated with bowel movements after eating. (Tr. 326-327) During a primary care visit on September 22, 2022, Plaintiff complained she had experienced eight watery bowel movements that day, and did not feel comfortable driving because she had frequent urges to have bowel movements and was worried about having accidents.[3] (Tr. 443) In October 2022, Plaintiff reported experiencing frequent stomach pain and cramping that was alleviated by diarrhea. (Tr. 353) While Plaintiff occasionally reported improvements in her condition, in July, August and September 2023 Plaintiff reported unexplained weight loss, nausea, vomiting, constipation, diarrhea, and abdominal pain. (Tr. 620, 800, 818, 796, 858, 816) Plaintiff made the same assertions in her adult function reports. (Tr. 227-228, 252-253[4])

Despite this consistency, in her opinion the ALJ did not give any reasons for discounting Plaintiff's complaints. In particular, she engaged in no discussion of the *Polaski* factors, and how they apply in Plaintiff's case. *See Polaski*, 739 F.2d at 1322. Furthermore, although she determined that Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were not consistent with the medical and other evidence of record, the ALJ provided no evidence to support this conclusion with respect to Plaintiff's IBS symptoms. *See Fendler*, 2020

---

[3] Plaintiff noted her unwillingness to drive affected her ability to go to her job. (Tr. 443)

[4] In her November 13, 2023 adult function report, Plaintiff stated as follows:

> I am unable to drive somedays, I don't drive anywhere I can't be near a restroom. I have debilitating pain in my abdomen and stomach. Struggling with leaving the house at all due to spontaneous diarrhea episodes on a daily basis, most days, more than 6 times a day. I cannot wear "work" attire, it has to be loose fitting due to bloating.

(Tr. 252)

WL 3101043, at *7 (holding that if the ALJ finds the claimant's statements inconsistent with the evidence of record, she "must make an express determination and detail specific reasons for the weight given the claimant's testimony."). The Court thus finds that in concluding Plaintiff's subjective statements were inconsistent with the record, the ALJ failed sufficiently to satisfy the mandate of *Polaski*. *Fendler*, 2020 WL 3101043, at *8.

The Court further finds that the ALJ's error does not appear harmless. A remand is not necessary "if the ALJ's failure to explain the rationale for [her] omission of an explicit limitation [ ] would have no impact on the outcome of the case." *Kenneth v. Kijakazi*, No. 22-cv-373 KMM/DJF, 2023 WL 2394397, at *9 (D. Minn. Jan. 27, 2023) (citation omitted). Here, however, the vocational expert opined there would be no competitive employment available in the national economy for an individual requiring bathroom access nearby, with the freedom to take up to four additional breaks lasting up to 20 minutes throughout the day at her discretion. (Tr. 59)[5] As such, if the ALJ had included the cited limitation in the RFC, the outcome might have been different. *See Titus v. O'Malley*, No. 4:23-CV-00129-JSD, 2024 WL 620364, at *4 (E.D. Mo. Feb. 14, 2024).

On remand the ALJ should consider Plaintiff's subjective complaints, together with the underlying evidence supporting same, "and should either incorporate all of those limitations into the RFC or explain why any excluded limitation was not adopted." *Bedore v. Kijakazi*, No. 4:22-CV-567 SPM, 2023 WL 6064854, at *6 (E.D. Mo. Sept. 18, 2023). Because remand is required, the Court need not address Plaintiff's other arguments. *Id.* (citing *Berry v. Kijakazi*, No. 4:20-CV-890 RLW, 2021 WL 4459699, at *9 (E.D. Mo. Sept. 29, 2021) ("Because remand is required, the

[5] As noted above, the vocational expert further testified that a person who was absent one or more days of work per month at unscheduled times, or who arrived late of left early unpredictably at least 3-5 times per month, would not be able to sustain competitive employment. (Tr. 60)

Court does not address all of Plaintiff's arguments.")); *see also Hirner v. Saul*, No. 2:21-CV-38 SRW, 2022 WL 3153720, at *10 (E.D. Mo. Aug. 8, 2022).

**VI. Conclusion**

For the reasons discussed above,

**IT IS HEREBY ORDERED** that, pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED**, and this cause is **REMANDED** to the Commissioner for further consideration consistent with this opinion.

An order of remand shall accompany this Memorandum and Order.

Dated this 6th day of October, 2026.

RODNEY H. HOLMES
UNITED STATES MAGISTRATE JUDGE